1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHRISTOPHER JAY SANCHEZ,

              Plaintiff,

    v.

HAROLD CLARKE, *et al*,

              Defendants.

Case No.  C05-5486FDB

ORDER TO SHOW CAUSE

      This matter has been referred to Magistrate Judge Karen L. Strombom pursuant to 28 U.S.C. § 636(b)(1),  Local Magistrates Rules MJR 3 and 4, and Rule 72 of the Federal Rules of Civil Procedure. Plaintiff has filed a civil rights complaint under 42 U.S.C. § 1983 (Dkt. #9) and is proceeding *in forma pauperis*.  This matter comes before the Court on defendants' motion for judgment on the pleadings dismissing this action pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(c). (Dkt. #55). After reviewing defendants' motion, plaintiff's response thereto and the balance of the record, the Court hereby finds and orders as follows:

ORDER
Page - 1

1  I.      Standards of Review

2          A.      Motions for Judgment on the Pleadings

3          Any party may bring a motion for judgment on the pleadings "[a]fter the pleadings are closed but

4  within such time as not to delay the trial." Fed. R. Civ. P. 12(c).  All allegations of material fact in the non-

5  moving party's pleadings are taken as true and "construed in the light most favorable to that party."

6  General Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church,

7  887 F.2d 228, 230 (9th Cir. 1989); Fajardo v. County of Los Angeles, 179 F.3d 698, 699 (9th Cir. 1999).

8  All inferences to be drawn from those facts also are construed in favor of the party opposing the motion, as

9  are all "[u]ncontested allegations to which the [moving] party had an opportunity to respond." Qwest

10  Communications Corp. v. City of Berkeley, 208 F.R.D. 288, 291 (N.D. Cal. 2002) (citing Flora v. Home

11  Fed'l Sav. & Loan Ass'n, 685 F.2d 209, 211 (7th Cir. 1982); Ludahl v. Seaview Boat Yard, Inc., 869 F.

12  Supp. 825, 826 (W.D. Wash. 1994) (citing General Conference Corp., 887 F.2d at 230).

13          The standard of review that is applied to a motion for judgment on the pleadings is essentially the

14  same as that which is applicable to a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  Luhdahl, 869

15  F. Supp. at 826 (citing William W. Schwarzer, et al., Federal Civil Procedure Before Trial, 9-58.6 (The

16  Rutter Group 1993); Qwest, 208 F.R.D. at 291 (Fed. R. Civ. P. 12(b)(6) and 12(c) are substantially

17  identical).  Under that standard, the Court should not dismiss the complaint, "unless it appears beyond

18  doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

19  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

20          Dismissal may be based upon "the lack of a cognizable legal theory or the absence of sufficient facts

21  alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.

22  1990).  Vague and mere "[c]onclusionary allegations, unsupported by facts" are not sufficient to state a

23  claim under 42 U.S.C. § 1983. Jones v. Community Development Agency, 733 F.2d 646, 649 (9th Cir.

24  1984); Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992).  Therefore, even though the Court is to

25  construe the complaint liberally, such construction "may not supply essential elements of the claim that

26  were not initially pled." Pena, 976 F.2d at 471.  Here, plaintiff has not alleged any claim or cause of action

27  upon which the relief he is requesting can be granted.

28          B.      Matters Outside the Pleadings

           As with a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court generally "may not consider

any material beyond the pleadings" in ruling on a motion on the pleadings. Lee v. City of Los Angeles, 250

F.3d 668, 688 (9th Cir. 2001) (citation omitted); Qwest, 208 F.R.D. at 291.  Thus, Fed. R. Civ. P. 12(c)

provides in relevant part:

> If, on a motion for judgment on the pleadings, matters outside the pleading are presented
> to and not excluded by the court, the motion shall be treated as one for summary
> judgment and disposed of as provided in Rule 56, and all parties shall be given
> reasonable opportunity to present all material made pertinent to such a motion by Rule
> 56.

See also Fed. R. Civ. P. 12(b).

A motion for judgment on the pleadings must be treated as a motion for summary judgment,

therefore, if either party submits materials that are outside the pleadings in support of or opposition to the

motion, and the Court relies on those materials. Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.,

896 F.2d 1542, 1550 (9th Cir. 1990); Jackson v. Southern California Gas Co., 881 F.2d 638, 643 n. 4 (9th

Cir.1989) (proper inquiry is whether court relied on extraneous matter); Qwest, 208 F.R.D. at 291 (court

must appear to have relied on extrinsic evidence).  Failure to treat the motion as one for summary

judgment would constitute reversible error. See Bonilla v. Oakland Scavenger Co., 697 F.2d 1297, 1301

(9th Cir. 1982); Costen v. Pauline's Sportswear, Inc., 391 F.2d 81, 84-85 (9th Cir. 1968).

In his response to defendants' motion, plaintiff submitted 100 numbered exhibits, consisting of a

total of 100 pages.  The Court finds, however, that the issues presented by defendants' motion can be

resolved without reliance on such extrinsic evidence.  Accordingly, none of that evidence has been relied

on by the Court in making the findings contained herein.  As such, the Court hereby deems it appropriate

to address defendants' motion without converting it into a motion for summary judgment.

C.      Section 1983 Complaints

A complaint is frivolous when it has no arguable basis in law or fact. Franklin v. Murphy, 745 F.2d

1221, 1228 (9th Cir. 1984).  To state a claim under 42 U.S.C. § 1983, a complaint must allege: (i) the

conduct complained of was committed by a person acting under color of state law, and (ii) the conduct

deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United

States.  Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474

U.S. 327 (1986).  Section 1983 is the appropriate avenue to remedy an alleged wrong only if both of these

elements are present.  Haygood v. Younger, 769 F.2d 1350, 1354 (9th Cir. 1985).  Plaintiff also must

allege facts showing how individually named defendants caused or personally participated in causing the

1    harm alleged in the complaint. <u>Arnold v. IBM</u>, 637 F.2d 1350, 1355 (9th Cir. 1981).

2           A person will be held to deprive another "of a constitutional right, within the meaning of section

3    1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act

4    which he is legally required to do that *causes* the deprivation of which [the plaintiff complains]." <u>Leer v.</u>

5    <u>Murphy</u>, 844 F.2d 628, 633 (9th Cir. 1988) (emphasis in original) (citation omitted). The court's inquiry

6    "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts

7    or omissions are alleged to have caused a constitutional deprivation." <u>Id.</u> Further, a defendant cannot be

8    held liable under 42 U.S.C. § 1983 solely on the basis of supervisory responsibility or position. <u>Monell v.</u>

9    <u>New York City Dept. of Social Services</u>, 436 U.S. 658, 694 n.58 (1978); <u>Padway v. Palches</u>, 665 F.2d

10   965, 968 (9th Cir. 1982) (theory of *respondeat superior* insufficient to state section 1983 claim).

11          Before the Court "may dismiss a *pro se* complaint for failure to state a claim," it "must provide the

12   *pro se* litigant with notice of the deficiencies of his or her complaint and an opportunity to amend the

13   complaint prior to dismissal." <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1055 (9th Cir. 1992); <u>see also</u> <u>Sparling</u>

14   <u>v. Hoffman Construction Co., Inc.</u>, 864 F.2d 635, 638 (9th Cir. 1988) (plaintiff must be given both notice

15   of intention to dismiss and some opportunity to respond, unless plaintiff cannot possibly win relief); <u>Noll v.</u>

16   <u>Carlson</u>, 809 F.2d 1446, 1449 (9th Cir. 1987) (court erred by not notifying *pro se* prisoner litigant of

17   amended complaint's deficiencies and allowing him leave to amend). Accordingly, while for the reasons

18   set forth herein, the court finds that dismissal of plaintiff's complaint under Fed. R. Civ. P. 12(c) would be

19   proper, the Court is issuing this order to give plaintiff an opportunity to amend his complaint so as to cure,

20   if possible, the deficiencies noted below.

21   II.    <u>Plaintiff's Eighth Amendment Claims</u>

22          The Eighth Amendment prohibits those "punishments which are incompatible with 'the evolving

23   standards of decency that mark the progress of a maturing society . . . or which involve the unnecessary

24   and wanton infliction of pain." <u>Estelle v. Gamble</u>, 429 U.S. 97, 102-03 (1976) (citations omitted). To state

25   a claim under the Eighth Amendment, plaintiff must satisfy two requirements. First, the deprivation being

26   alleged "must be, objectively, 'sufficiently serious.'" <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994)

27   (citation omitted). That is, the prison official's "act or omission must result in the denial of 'the minimum

28   civilized measure of life's necessities.'" <u>Id.</u> For claims based on failure to prevent harm, the inmate also

     must show he was "incarcerated under conditions posing a substantial risk of serious harm." <u>Id.</u>

In addition to this "objective component," there is a subjective one. Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996). The prison official thus also "must have a 'sufficiently culpable state of mind.'" Farmer, 511 U.S. at 834 (citation omitted); Helling v. McKinney, 509 U.S. 25, 33 (1993) ("[A] claim that a prisoner's confinement violate[s] the Eighth Amendment requires an inquiry into the prison officials' state of mind."). This state of mind "is one of 'deliberate indifference' to inmate health or safety." Farmer, 511 U.S. at 834. In other words, liability under the Eighth Amendment "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Id. at 835 (citation omitted). An official, therefore, will not be liable:

> [U]nless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harms exists, and he must also draw the inference.

Id. at 837; see also Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). A prison "official's failure to alleviate a significant risk that he should have perceived but did not," therefore, cannot "be condemned as the infliction of punishment." Id. at 838.

A.    Claim #1

In his first claim, plaintiff alleges he was subject to deliberate medical indifference by Clallam Bay Corrections Center medical staff members. Specifically, plaintiff claims that although he "complained numerous times" that his stomach hurt when he ate "certain foods," he was "denied any treatment and special diet by defendants Joseph and Ellis. As explained below, however, this claim is fatally deficient for two reasons. First, plaintiff has failed to set forth specific facts showing how either defendant Joseph or defendant Ellis caused or personally participated in causing the alleged harm. Second, plaintiff has not established the existence of an Eighth Amendment violation here.

Prison officials' "[d]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." Id. at 104 (internal citation omitted); see also Hudson v. McMillan, 503 U.S. 1, 6 (1992). As such, the state "has an obligation to provide medical care" to those within its custody, and therefore "cannot be deliberately indifferent to the medical needs of its prisoners." Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000); McGuckin, 974 F.2d at 1059. However, "not every breach of that duty is of constitutional proportions." Lopez, 203 F.3d at 1131 (quoting Estelle, 429 U.S. at 104 (1976)).

To state a cognizable Eighth Amendment claim in this context, a prisoner thus "must allege acts or

1   omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429

2   U.S. at 106; see also Lopez, 203 F.3d at 1131 (deliberate indifference to serious medical needs must be

3   shown); McGuckin, 974 F.2d at 1059.  Prison officials are "deliberately indifferent" to "serious medical

4   needs" when they "deny, delay, or intentionally interfere with medical treatment." Lopez, 203 F.3d at

5   1131.  Deliberate indifference also may be shown "by the way in which prison physicians provide medial

6   care." McGuckin, 974 F.2d at 1059.

7        On the other hand, "[m]ere negligence in diagnosing or treating a medical condition, without

8   more," does not implicate the Cruel and Unusual Punishment Clause of the Eighth Amendment. Lopez,

9   203 F.3d at 1131; see also O'Loughlin v. Doe, 920 F.2d 614, 617 (9th Cir. 1990) (isolated occurrences of

10  neglect do not amount to constitutional violation); Frost v. Agnos, 152 F.3d 1124, 1130 (9th Cir. 1998)

11  (mere negligence in providing medical care does not violate constitution).  By contrast, "a finding that the

12  defendant repeatedly failed to treat an inmate properly or that a single failure was egregious strongly

13  suggests that the defendant's actions were motivated by 'deliberate indifference' to the prisoner's medical

14  needs." McGucken, 974 F.3d at 1060-61.  Thus, the determination as to whether deliberate indifference

15  exists "involves an examination of two elements: the seriousness of the prisoner's medical need and the

16  nature of the defendant's response to that need." Id., 974 F.2d at 1059.

17       A "serious" medical need will be found to exist "if the failure to treat a prisoner's condition could

18  result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id. (quoting Estelle,

19  429 U.S. at 104).  The following examples are indications that a prisoner's need for medical treatment is

20  "serious":

21          The existence of an injury that a reasonable doctor or patient would find important and
            worthy of comment or treatment; the presence of a medical condition that significantly
22          affects an individual's daily activities; or the existence of chronic and substantial pain.

23  Id. at 1059-60.  As noted above, deliberate indifference to a prisoner's serious medical need requires "a

24  purposeful act or failure to act on the part of the defendant." Id. at 1060.  In other words, "[a] defendant

25  must purposefully ignore or fail to respond to a prisoner's pain or possible medical need." Id.

26       Here, plaintiff merely alleges he was denied treatment and a special diet for stomach pains he gets

27  when he ate certain foods.  However, plaintiff fails to show that any such pain rose to the level of a serious

28  medical, i.e., that failure to treat it would result in further significant injury or the unnecessary and wanton

    infliction of pain.  Plaintiff also fails to explain what treatment he was denied (let alone whether any such

ORDER
Page - 6

treatment would have been effective or necessary) or special diet he needed.  Finally, plaintiff has not shown that either defendant Joseph or defendant Ellis were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed <u>and</u> drew that inference.

B.   <u>Claim #2</u>

In his second claim, plaintiff alleges defendants Sims, Joseph, Hophner, Pola, Morgan, Carter, Mason, Bail, and Clarke denied him "proper" medical treatment for "shattered" right middle finger knuckles he incurred after being assaulted by another inmate.  Again, however, plaintiff fails to set forth any specific facts to show that these named defendants caused or personally participated in causing the harm alleged.  In addition, as with his first claim, plaintiff fails to show that the treatment he seeks, replacement of his "shattered" knuckles, rose to the level of a serious medical need, i.e., that failure to replace them would result in further significant injury or the unnecessary and wanton infliction of pain. Indeed, he fails to explain why the specific treatment he desires is medically necessary.  Finally, plaintiff has not shown that any of the above named defendants were aware of facts from which the inference could be drawn that a substantial risk of serious harm existed <u>and</u> drew that inference.

C.   <u>Claim #3</u>

In his third claim, plaintiff alleges that he was told by a prison medical staff member that he would "not be treated properly" for his "broken" and "handicapped" hand, because the Clallam Bay Corrections Center medical staff had not received "pay raises in years." Complaint, p. 7.[1]  Once more, plaintiff fails to set forth specific facts showing how individually named defendants caused or personally participated in causing the harm alleged.  In addition, for the same reasons noted in the above discussions regarding his first two claims that he has failed to sufficiently allege an Eighth Amendment violation, plaintiff fails to do so here as well.

D.   <u>Claim #4</u>

In his fourth claim, plaintiff alleges a constitutional violation in the conditions of his confinement. Specifically, he claims that the temperature in his cell is always "well below the basic room temperature of 73º," and that he is "constantly cold." Complaint, p. 8.  Plaintiff alleges that defendant Blakeman

---

[1]Although plaintiff has labeled this page as page #1, it is actually the seventh page of his complaint. In addition, for sake of clarity and consistency, the Court, when referring to the specific pages of plaintiff's complaint, shall refer to the actual document page number, and not the page number as labeled by plaintiff.

1   "punished" him twice for "plugging the cold vent air," and that he was "not given any relief" by defendants

2   Blakeman, Carter or Mason.  Again, however, plaintiff has set forth no specific facts showing how any of

3   these named defendants were responsible for the temperature in his cell, or that they otherwise caused or

4   personally participated in causing the cold air to come into his cell, or that defendant Blakeman acted

5   improperly in "punishing" him.  The harm alleged, furthermore, does not arise to the level of an Eighth

6   Amendment violation.

7          Although "those deprivations denying 'the minimal civilized measure of life's necessities' are

8   sufficiently grave to form the basis of an Eighth Amendment violation," the "routine discomfort inherent in

9   the prison setting is inadequate to satisfy" the objective component of the Eighth Amendment inquiry.

10  Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (citation omitted).  Thus, "[p]rison officials have a

11  duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and

12  personal safety." Id.  The Court must consider "[t]he circumstances, nature, and duration of a deprivation

13  of these necessities" to determine if a constitutional violation has occurred. Id.

14         While "[t]he more basic the need, the shorter the time it can be withheld," even "[m]ore modest

15  deprivations can also form the objective basis of a violation," but only if those deprivations "are lengthy or

16  ongoing." Id. (citation omitted).  With respect to plaintiff's allegations regarding low cell temperature,

17  "adequate heating" is guaranteed by the Eighth Amendment. Keenan, 83 F.3d at 1091.  The prisoner

18  plaintiff in Keenan, like plaintiff in this case, "alleged only that average temperatures in his cell 'tend[ed]'

19  to be either 'well above' or 'well below' room temperature," which the Ninth Circuit found suggested

20  "only that the temperature was not comfortable" and did not constitute a constitutional violation. Id.  Here,

21  plaintiff has not alleged or shown any harm other than the fact that he feels cold, which, as with the Ninth

22  Circuit, the Court finds is insufficient to state an Eighth Amendment claim.

23         E.     Claim #5

24         In his fifth claim, plaintiff once more alleges a constitutional violation involving his conditions of

25  confinement.  This time, plaintiff claims that the "hot meals" served at his institution are "constantly being

26  served" cold. Complaint, p. 8.  Plaintiff further states that the Clallam Bay Corrections Center "food

27  manager," defendant Jackson, and defendants Mason and Carter have provided "no relief." Id.  First, as he

28  consistently has failed to do, plaintiff has not set forth specific facts showing how defendants Mason or

Carter, or even Jackson, caused, personally participated in causing, or were otherwise responsible for

1   preventing, the harm alleged, i.e., the serving of hot meals cold.

2           With respect to plaintiff's conditions of confinement claim, "[a]dequate food is a basic human need

3   protected by the Eighth Amendment." Keenan, 83 F.3d at 1091.  Thus, "[w]hile prison food need not be

4   'tasty or aesthetically pleasing,' it must be 'adequate to maintain health.'" Id. (citation omitted).  On the

5   other hand, "[t]he fact that the food occasionally contains foreign objects or sometimes is served cold,

6   while unpleasant, does not amount to a constitutional deprivation." LeMaire v. Maass, 12, F.3d 1444,

7   1456 (9th Cir. 1993).  Although plaintiff alleges his hot meals are "constantly" being served cold, he has not

8   alleged or shown that they are inadequate to maintain his health.  Accordingly, this claim is fatally deficient

9   as well.

10          F.      Claim #6

11          In his sixth claim, plaintiff again makes a deliberate indifference to medical needs allegation.  This

12  time, he claims that he was taken off of Ritalin, and that while he was told by his "mental health doctor"

13  that the Department of Corrections ("DOC") had "eliminated all stimulant medication use and that he

14  could not help him," defendant Bail told him that DOC had not eliminated it. Complaint, p. 8.  However,

15  plaintiff fails to show that the elimination of his Ritalin arose to a serious medical need, i.e., that failure to

16  place him back on that medication would result in further significant injury or the unnecessary and wanton

17  infliction of pain.  Plaintiff also fails to show that any named defendant, including defendant Bail, caused or

18  personally participated in causing the harm alleged, let alone that any of them were aware of facts from

19  which the inference could be drawn that a substantial risk of serious harm existed and drew that inference.

20  III.    Plaintiff's First Amendment Mail Restrictions Claims

21          In the context of mail restrictions, "when a prison regulation impinges on inmates' constitutional

22  rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley,

23  482 U.S. 78, 89 (1987).  To determine "the reasonableness of the regulation at issue," there are several

24  factors that are relevant to consider. Id.  Thus, "[f]irst, there must be a 'valid, rational connection'"

25  between the prison's action and "the legitimate governmental interest put forward to justify it.'" Id.

26  (citation omitted).  Under this factor, the action "cannot be sustained where the logical connection"

27  between it and "the asserted goal is so remote as to render the policy arbitrary or irrational." Id. at 89-90.

28  The governmental objective or interest also "must be a legitimate and neutral one." Id. at 90.  That is, the

    particular action at issue must operate "in a neutral fashion, without regard to the content of the

expression." Id.

The second factor "is whether there are alternate means of exercising the right that remain open to prison inmates." Id. Thus, "[w]here 'other avenues' remain available for the exercise of the asserted right, . . . courts should be particularly conscious of the 'measure of judicial deference owed to corrections officials . . . in gauging the validity" of the action. Id. (citations omitted). The third factor "is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." Id. In other words, "[w]hen accommodation of an asserted right will have a significant 'ripple effect' on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials." Id.

Lastly, "the absence of ready alternatives is evidence of the reasonableness of a prison regulation." Id. On the other hand, "the existence of obvious easy alternatives may be evidence that the regulation is not reasonable, but is an 'exaggerated response' to prison concerns." Id. Prison officials, however, need not "set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint" to satisfy this factor. Id. at 90-91. In other words, it "is not a 'least restrictive alternative' test." Id. Nevertheless, if a prisoner "can point to an alternative that fully accommodates" his or her "rights at de minimis cost to valid penological interests, a court may consider that as evidence" that the governmental action "does not satisfy the reasonable relationship standard." Id. at 91.

While the above factors generally have been applied by the Supreme Court to governmental action affecting incoming inmate mail (see Turner, 482 U.S. 78; Thornburgh v. Abbott, 490 U.S. 401 (1989)), the standards for evaluating restrictions on a prisoner's outgoing mail, though stricter, are not substantially different for the purposes of this case. With respect to such restrictions, the Supreme Court has stated:

> First, the regulation or practice in question must further an important or substantial governmental interest unrelated to the suppression of expression. Prison officials . . . must show that a regulation authorizing mail censorship furthers one or more of the substantial governmental interests of security, order, and rehabilitation. Second, the limitation of First Amendment freedoms must be no greater than is necessary or essential to the protection of the particular governmental interest involved. Thus a restriction on inmate correspondence that furthers an important or substantial interest of penal administration will nevertheless be invalid if its sweep is unnecessarily broad.

Abbott, 490 U.S. at 408 (quoting Martinez, 416 U.S. at 413-14. Even under this standard, however, prison officials are not deprived "of the degree of discretion necessary to vindicate 'the particular governmental interest involved.'" Id. at 409 (quoting Martinez, 416 U.S. at 414).

ORDER
Page - 10

The Supreme Court thus has further stated that:

> Some latitude in anticipating the probable consequences of allowing certain speech in a prison environment is essential to the proper discharge of an administrator's duty. But any regulation or practice that restricts inmate correspondence must be generally necessary to protect one or more . . . legitimate governmental interests.

Id. In other words, even with respect to outgoing inmate mail, the Court has "required no more than that" the challenged governmental action "be 'generally necessary' to a legitimate governmental interest." Id. at 411 (quoting Martinez, 416 U.S. at 414); see also Witherow, 52 F.3d at 265 ("When a prison regulation affects outgoing mail as opposed to incoming mail, there must be a 'closer fit between the regulation and the purpose it serves.'") (quoting Abbott, 490 U.S. at 412).

This somewhat greater required showing on the part of the government is due to the recognition that "outgoing personal correspondence from prisoners" in general does "not, by its very nature, pose a serious threat to prison order and security." Abbott, 409 U.S. at 411, 413 (implications of outgoing correspondence for prison security are of categorically lesser magnitude than implications of incoming materials). At no time, however, with respect to a prison's actions affecting either incoming or outgoing inmate mail, must a "least restrictive means" test be satisfied. Witherow, 52 F.3d at 265 (citing Abbott, 409 U.S. at 411-13).

A.    Claim #7

In his seventh claim, plaintiff alleges DOC denied him his constitutional right to receive Playboy magazine via the mail. He claims DOC does not consider a magazine's "political or artistic values," but "simply rejects any magazine or photo if genatalia is [sic] shown." Complaint, p. 9. The first reason this claim fails is because as before, plaintiff has failed to set forth specific facts showing how individually named defendants caused or personally participated in causing the harm alleged. Second, plaintiff has not shown or sufficiently alleged that any actions taken by DOC with respect to its alleged rejection of his subscription for Playboy violated any of the above Turner factors.

Prison regulations "affecting the sending of a 'publication' . . . to a prisoner must be analyzed under the *Turner* reasonableness standard." Abbott, 490 U.S. at 413. Thus, a prison regulation is valid if it is "reasonably related to legitimate penological interests." Id. (citing Turner, 482 U.S. at 89). While plaintiff alleges DOC does not consider a magazine's political or artistic values, this is not the standard for determining the reasonableness of prison regulation. Indeed, plaintiff has not alleged that the rejection of

1    his Playboy magazine subscription is <u>not</u> reasonably related to a legitimate penological interest or fails to

2    meet any of the other <u>Turner</u> factors discussed above.

3         B.     <u>Claim #8</u>

4         In his eighth claim, plaintiff alleges he was denied his liberty interest in continuing to receive his

5    Playboy magazine.  Specifically, he claims he previously was allowed magazines containing photographs of

6    "genatalia," but now can be punished for having that type of property.  First, it must be noted that while

7    plaintiff alleges he can now be punished for having such property, he has not alleged in this claim that he

8    actually has been punished for doing so.  Even giving him the benefit of the doubt on this issue, however,

9    as discussed above, plaintiff has failed to show under the <u>Turner</u> factors that any policy or regulation of, or

10   action taken by, DOC regarding his Playboy or similar magazines violated his First Amendment rights.

11   Similarly, plaintiff has failed to show a due process violation has occurred as well.

12        The Due Process Clause of the Fourteenth Amendment provides that no state shall deprive "any

13   person of life, liberty, or property, without due process of law."  U.S. Const. Amend. XIV.  Substantive

14   due process protects individuals from arbitrary and unreasonable government action which deprives any

15   person of life, liberty, or property.  <u>Kawaoka v. City of Arroyo Grande</u>, 17 F.3d 1227, 1234 (9th Cir.

16   1994).  To establish a substantive due process violation, the government's action must have been "clearly

17   arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general

18   welfare."  <u>Sinaloa Lake Owners</u>, 882 F.2d 1398, 1407 (9th Cir. 1989) (quoting <u>Village of Euclid v. Ambler</u>

19   <u>Realty Co.</u>, 272 U.S. 365, 395 (1926)); <u>Bateson v. Geisse</u>, 857 F.2d 1300, 1303  (9th Cir.1988).

20        In the prison context, furthermore, an inmate will be found to have "a liberty interest under the

21   federal constitution when a change occurs in confinement that imposes an 'atypical and significant hardship

22   . . . in relation to the ordinary incidents of prison life.'" <u>Resnick v. Hayes</u>, 213 F.3d 443, 448 (9th Cir.

23   2000) (quoting <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995); <u>Jackson v. Carey</u>, 353 F.3d 750, 755 (9th Cir.

24   2003).  Plaintiff, however, has failed to show that any actions taken with respect to his receipt of Playboy

25   or other similar magazines imposed an "atypical and significant hardship" on him "in relation to the

26   ordinary incidents of prison life." <u>Sandin</u>, 515 U.S. at 484.

27        Finally, plaintiff has not sufficiently alleged or set forth specific facts showing how any of the

28   named defendants caused or personally participated in causing the harm alleged.  Plaintiff does allege that

     "no relief was given by" defendants Carter, Mason or Clarke with respect to the violations in this claim and

ORDER
Page - 12

1   those in his seventh claim, but such a bare allegation of harm hardly suffices to establish personal

2   participation, and likely evidences plaintiff's intent to include these defendants in this claim solely on the

3   basis of their supervisory positions.

4         C.    <u>Claim #9</u>

5         In his ninth claim, plaintiff alleges Clallam Bay Corrections Center mailroom staff "deliberately

6   always open" his mail from the "Attorney General," Washington State Legislature, United States Supreme

7   Court, and Washington State "Health Department." Complaint, p. 9. Once more, plaintiff has failed to

8   allege or set forth any specific facts showing how any individually named defendants caused or personally

9   participated in causing the harm alleged. In addition, plaintiff has not sufficiently alleged a violation of his

10  First Amendment rights. That is, mail from the courts, public officials and public agencies does not

11  constitute "legal mail," and thus may be opened outside his presence. <u>Keenan</u>, 83 F.3d at 1094; <u>Mann v.</u>

12  <u>Adams</u>, 846 F.2d 589, 590-91 (9th Cir. 1988). In addition, while plaintiff claims there is no "penological

13  justification" for doing so, again such bare allegations are insufficient to state a section 1983 claim.

14        D.    <u>Claim #10</u>

15        In his tenth claim, plaintiff alleges his First Amendment and procedural due process rights were

16  violated, because he was not provided with any notice prior to "the restriction review of" his various

17  subscription publications. Again, plaintiff has made no showing that the holding by the "mailroom" of his

18  subscription publications constitutes a violation of his First Amendment rights under the above <u>Turner</u>

19  factors. It is true that the "withhold[ing] delivery of [inmate mail] must be accompanied by minimum

20  procedural safeguards." <u>Sorrels v. McKee</u>, 290 F.3d 965, 972 (9th Cir. 2002). Further, although prisoners

21  do have a "due process liberty interest in receiving notice" that their "incoming mail is being withheld by

22  prison authorities," plaintiff admits he prevailed on this issue at the administrative grievance level. <u>Frost v.</u>

23  <u>Symington</u>, 197 F.3d 348, 353 (9th Cir. 1999); <u>Sorrels</u>, 290 F.3d at 972.

24        Plaintiff claims that this "practice" is still ongoing, but, as noted above, such bare allegations will

25  not suffice in a section 1983 claim. In addition, "[i]f a meaningful post-deprivation remedy exists for an

26  alleged deprivation of property, then that post-deprivation remedy is sufficient to satisfy the requirements

27  of due process." <u>Sorrels</u>, 290 F.3d at 972. Here, there is no indication that the prison grievance process is

28  unavailable to plaintiff for challenging any further lack of notice issues that continue or may arise in the

future. Finally, plaintiff does refer to defendants Hoban, Riddle, Carter, Mason, Bail, and Clarke in this

ORDER
Page - 13

1 | claim, but fails set forth any specific facts showing how any of them caused or personally participated in

2 | causing the harm alleged.

3 |        E.     Claim #11

4 |       In his eleventh claim, plaintiff alleges his right to equal protection under the law was violated by the

5 | implementation of a DOC policy that allows non-indigent prisoners, but not indigent inmates, to use the

6 | funds in their postage accounts for special postal services, such as certified-return receipt. This claim, too,

7 | is fatally deficient. First, plaintiff states that his administrative grievance regarding this issue is on its "last

8 | level of appeal." Complaint, p. 11. The Prison Litigation Reform Act ("PLRA") requires exhaustion of

9 | administrative remedies prior to filing a complaint in federal court. The relevant portion of the PLRA

10 | states:

11 |       No action shall be brought with respect to prison conditions under section 1983 of this title,
   |       or any other Federal law, by a prisoner confined in any jail, prison, or other correctional

12 |       facility until such administrative remedies as are available are exhausted.

13 | 42 U.S.C. § 1997e(a).

14 |       This exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or

15 | occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Further, "[a]ll 'available' remedies" must be

16 | exhausted, "[e]ven when the prisoner seeks relief not available in grievance proceedings." Id. at 524. An

17 | inmate also must exhaust prison grievance remedies before filing suit if the grievance system is capable of

18 | providing any relief or taking any action in response to the grievance. Booth v. Churner, 531 U.S. 956, 121

19 | S. Ct. 1819, 1825 (2001). While plaintiff claims it has been 104 days since he filed his grievance, it is not

20 | clear that he has done everything possible to exhaust his administrative remedies.

21 |       In addition, it is true that the Equal Protection Clause requires that all persons similarly situated be

22 | treated similarly by the government. Inmates are protected under the Equal Protection Clause against

23 | invidious discrimination. Wolff v. McDonnell, 418 U.S. 539, 556 (1974); Lee v. Washington, 390 U.S.

24 | 333, 334 (1968). To set forth a *prima facie* violation of the Equal Protection Clause a plaintiff first must

25 | prove a discriminatory intent or purpose. Village of Arlington Heights v. Metropolitan Housing Dev.

26 | Corp., 429 U.S. 252, 265 (1977); Bagley v. CMC Real Estate Corp., 923 F.2d 758, 763 (9th Cir. 1991).

27 | Conclusory allegations by themselves do not establish an equal protection violation without further proof

28 | of invidious discriminatory intent. See Village of Arlington Heights, 429 U.S. at 265.

      Plaintiff must "show that he was treated differently from other inmates because he belonged to a

protected class." <u>Seltzer-Bey v. Delo</u>, 66 F.3d 961, 964 (8th Cir. 1995); <u>see also</u> <u>Barren v. Harrington</u>, 152 F.3d 1193, 1195 (9th Cir. 1998) (to state claim under section 1983, plaintiff must show intent or purpose to discriminate against him based upon membership in protected class).  The fact that plaintiff is a prisoner, however, does not itself qualify him as a member of a protected class for Equal Protection Clause purposes. <u>See Wolff</u>, 418 U.S. at 556 (prisoners protected from invidious discrimination based on race); <u>Freeman v. Arpaio</u>, 125 F.3d 732, 737 (9th Cir. 1997) (inmates protected from intentional discrimination based on religion).

Prisoners also "do not constitute a suspect class." <u>Pryor v. Brennan</u>, 914 F.2d 921, 923 (7th Cir. 1990); <u>Moss v. Clark</u>, 886 F.2d 686, 690 (4th Cir. 1989); <u>Thornton v. Hunt</u>, 852 F.2d 526, 527 (11th Cir. 1988).  That is, "[t]he status of incarceration is neither an immutable characteristic, nor an invidious basis of classification." <u>Moss</u>, 886 F.2d at 690 (internal citations omitted).  Further, when a suspect class is not implicated, the court must determine whether the alleged discrimination is "patently arbitrary and bears no rational relationship to a legitimate governmental interest." <u>Vermouth v. Corrothers</u>, 827 F.2d 599, 602 (9th Cir. 1987) (citation omitted).

Here, plaintiff has not alleged defendant discriminated against him based on his race or religion. <u>Village of Arlington Heights</u>, 429 U.S. at 265; <u>Vermouth</u>, 827 F.2d at 602.  Plaintiff's claim that his right to equal protection under the law was violated based on his indigent status, therefore, is misplaced.  That is, the courts have not recognized this as a valid equal protection claim.

Finally, the only individually named defendant plaintiff refers to in this claim is defendant Carter, whom he claims gave "no relief."  Once more, this is wholly insufficient to allege personally participation in causing the harm alleged, but rather appears to be an attempt to seek liability based solely on defendant Carter's supervisory responsibility.

F.      Claim #12

In his twelfth claim, plaintiff alleges his First Amendment rights were violated by "C.B.C.C. I&I department and administrative staff," in that they had been "intercepting numerous outgoing and incoming mailings," had been responding to his "outgoing mailings," and had been "frauding [sic] to be someone else" in e-mails and letters sent to him. Complaint, p. 12.  First, with respect to each of these claims, plaintiff has failed to allege or set forth any specific facts showing how <u>individually-named defendants</u> caused or personally participated in causing the harm alleged.  Second, whether or not plaintiff has been

ORDER
Page - 15

1 defrauded in some respect, this is not an issue of constitutional dimension.

2 Plaintiff does also allege in this claim that defendant Blakeman "demoted" his "level status" in

3 response to complaints he made to the "C.B.C.C. I&I" department.  Thus, plaintiff appears to allege a

4 claim of retaliation against defendant Blakeman.  To state a claim for retaliation, an inmate "must allege

5 both that the type of activity he engaged in was protected under the first amendment and that the state

6 impermissibly infringed on his right to engage in the protected activity." Rizzo v. Dawson, 778 F.2d 527,

7 531 (9th Cir. 1985).  The inmate "must allege that he was retaliated against for exercising his constitutional

8 rights and that the retaliatory action does not advance legitimate penological goals, such as preserving

9 institutional order and discipline." Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994).

10 Federal courts, however, "should be circumspect when asked to intervene in the operation of state

11 prisons," and "should 'afford appropriate deference and flexibility' to prison officials in the evaluation of

12 proffered legitimate penological reasons for conduct alleged to be retaliatory." Pratt v. Rowland, 65 F.3d

13 802, 806-07 (9th Cir. 1995) (quoting Sandin v. Connor, 115 S. Ct. 2293, 2299 (1995)).  The inmate bears

14 the burden of proving the absence of any legitimate correctional goals. Id. at 806.  At first glance it seems

15 that plaintiff has alleged a proper claim of retaliation here.

16 Prisoners "have the right to petition the Government for redress of grievances." Cruz v. Beto, 405

17 U.S. 319, 321 (1972); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (First Amendment precludes

18 prison authorities from penalizing prisoners from exercising right to petition government for redress of

19 grievances).  Further, "a chilling effect on a prisoner's First Amendment right to file prison grievances is

20 sufficient to raise a retaliation claim." Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003); Bradley, 64 F.3d

21 at 1279 (right of meaningful access to courts extends to established prison procedures).  Here, however, as

22 noted above, plaintiff has failed to set forth any specific facts regarding the alleged underlying First

23 Amendment violations that he claims were the basis for a claim of retaliation against defendant Blakeman.

24 As such, to the extent that plaintiff is making a retaliation claim, it is fatally deficient.

25 G.   Claim #13

26 In his thirteenth and final claim, plaintiff alleges he has "submitted numerous grievances against the

27 mailroom for many of its practices," including mailing letters from him to his family via regular, as opposed

28 to certified, mail without his permission. Complaint, p. 13.  He alleges that two of those mailings never

reached his family.  Plaintiff further alleges that his magazines "are always deliberately held by someone in

1  the mailroom," and that he "always" gets them "1-2 weeks" after they "hit newsstands and stores," even

2  though the publishers send them to him early. Id.  On one occasion, furthermore, plaintiff claims one of his

3  magazines "was rejected due to supposed bondage," when that publication had never before been rejected.

4  Id.

5       As with his twelfth claim, however, this claim also is fatally deficient in that plaintiff has failed to

6  allege or set forth sufficiently specific facts to show how any of the individually named defendants caused

7  or personally participated in causing the harm alleged.  Here too, plaintiff raises a retaliation claim against

8  defendant Blakeman due the complaints plaintiff submitted.  But, again, as with the retaliation claim he

9  made in his twelfth claim, this retaliation claim also fails, because he did not set forth any specific facts

10  regarding individually named defendant participation in the alleged underlying constitutional violations on

11  which his claim of retaliation against defendant Blakeman is based.

12  IV.   Filing of Amended Complaint or Show Cause

13       Due to the deficiencies described above, plaintiff either shall file an amended complaint, curing, if

14  possible, the above noted deficiencies, or show cause explaining why this matter should not be dismissed

15  by **no later than June 4, 2006**.  The amended complaint must carry the same case number as this one.  If

16  an amended complaint is not timely filed or if plaintiff fails to adequately address these issues, the Court

17  will recommend that defendants' motion for judgment on the pleadings be granted, that this action be

18  dismissed as frivolous pursuant to 28 U.S.C. § 1915, and that such dismissal will count as a "strike" under

19  28 U.S.C. § 1915(g).

20       Plaintiff is advised that an amended pleading operates as a *complete* substitute for an original

21  pleading. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992) (citing Hal Roach Studios, Inc. v.

22  Richard Feiner & Co., 896 F.2d 1542, 1546 (9th Cir. 1990) (as amended), *cert. denied*, 506 U.S. 915

23  (1992).  Thus, if plaintiff chooses to file an amended complaint, the Court will not consider his original

24  complaint.

25  / / / / /

26  / / / / /

27  / / / / /

28  / / / / /

/ / / / /

ORDER
Page - 17

1     The Clerk is directed to send plaintiff the appropriate forms so that he may file an amended

2     complaint.  The Clerk is further directed to send a copy of this Order to plaintiff and counsel for

3     defendants.

4     DATED this 4th day of May, 2006.

5

6

7

8                                                     Karen L. Strombom
                                                      United States Magistrate Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28